UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-CIV-61786-BLOOM

FREIDRICK EVEILLARD and
NIRAIDA EVEILLARD

    Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC,
A Foreign Corporation,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS**

**THIS CAUSE** is before the Court on Defendant Nationstar Mortgage LLC's ("Nationstar") Motion to Dismiss (the "Motion", ECF No. [7]) Plaintiffs Freidrick and Niraida Eveillard's ("Plaintiffs") Complaint, ECF No. [1]. The Court has reviewed the Motion, all supporting and opposing filings, and the record in this case, and is otherwise fully advised as to the premises. For the reasons set forth below, the Court grants the Motion.

**I.    BACKGROUND**

This case is based on Nationstar's alleged disregard of its obligations triggered by Plaintiffs' invocation of the error resolution procedures established by the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA") and its implementing regulations, 12 C.F.R. part 1024 ("Regulation X").

Plaintiffs owned a home located in Miramar, Florida, which was subject to a mortgage loan and lien placed in January, 2006. Compl. ¶ 5. Nationstar serviced the mortgage. *Id*. ¶¶ 6-7. Following Plaintiffs' non-payment default on their mortgage, Nationstar commenced a

foreclosure action in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida (the "State Court") on September 17, 2008, Case No. CACE08-043901 (the "Foreclosure Action"). *See* ECF No. [7-1] (Foreclosure Action Docket).[1] Neither Plaintiff, both of whom were named defendants in the Foreclosure Action, filed an answer. *See id.* After hearing Nationstar's motion for summary judgment, the State Court entered a final judgment of foreclosure against Plaintiffs and in favor of Nationstar on June 10, 2010. *See id.*

The state court judgment specifically determined that Plaintiffs owed Nationstar $202,345.01 in principal, $35,151.10 in interest, and $28,055.44 for amounts advanced for unpaid escrows (through the date of judgment in 2010); along with certain other charges, the total due and owing Nationstar was adjudged at $270,836.97. ECF No. [7-2] (Final Judgment in Foreclosure Action). The state court found that Plaintiffs were in default on their loan obligations, failed to cure the default, and that the amounts specified in the judgment were due and owing. *Id*. Plaintiffs did not move for rehearing and failed to timely file an appeal. *See* Foreclosure Action Docket. The foreclosure sale, delayed by two bankruptcy filings and associated cancellations, proceeded on December 12, 2013. *Id*.; Compl. ¶ 11. Through the foreclosure sale, on January 24, 2014, title of Plaintiffs' property was transferred from Plaintiffs to Nationstar. Compl. ¶ 11.

In May 2013 – well after the foreclosure judgment but prior to the delayed foreclosure sale – Plaintiffs were approved to participate in the Florida Hardest Hit Program. Compl. ¶ 10. The Florida Hardest Hit Program is a federally funded foreclosure prevention assistance program administered by the Florida Housing Finance Corporation ("FHFC"). FLA. ADMIN CODE R. 67-

---

[1] The Court takes judicial notice of the public record filings in the Foreclosure Action. *See Universal Express, Inc. v. U.S. SEC*, 177 F. App'x. 52, 53 (11th Cir. 2006) (courts may take judicial notice of public records, such as a complaint filed in another court); *Haddad v. Dudek*, 784 Fla. Supp. 2d 1308, 1324 (M.D. Fla. 2011) ("[T]he Court may take judicial notice of and consider documents which are public records, that are attached to the motion to dismiss, without converting the motion to dismiss into a motion for summary judgment.").

59.001. The Program is designed to "provide temporary assistance to eligible homeowners." Manual (defined below) at 2. The programs administered under the Florida Hardest Hit Program are the Unemployment Mortgage Assistance Program ("UMAP"), the Mortgage Loan Reinstatement Program ("MLRP") and the Principal Reduction Program ("PR"). FLA. ADMIN CODE R. 67-59.005(3). The Florida Hardest Hit Fund Procedures Manual, HHFM-01, Rev. 6/12 (the "Manual"), has been adopted and incorporated by reference into the FHFC's governing rules. *See* FLA. ADMIN CODE R. 67-59.020(4).

Eligible applicants under the Florida Hardest Hit Programs receive assistance in the form of a forgivable loan from the FHFC, the proceeds of which are disbursed directly to the mortgage servicer on behalf of the borrower. FLA. ADMIN CODE R. 67-59.050; Manual at 3. The loan proceeds are purposed to pay monthly mortgage and mortgage-related expenses or satisfy mortgage arrearages, up to a capped amount. FLA. ADMIN CODE R. 67-59.010. This is designed to "provide a reasonable period of time for homeowners to become re-employed at a salary that is sufficient for them to either resume making full mortgage payments or qualify for a mortgage modification that will lower the payments and terms of the mortgage to an affordable level." Manual at 3.

To secure advancement of $42,000 in Program funds to Nationstar, Plaintiffs executed a promissory note and mortgage in favor of the FHFC. Compl. ¶ 12. That subordinate mortgage was duly recorded in the Official Records of Broward County, Florida on June 10, 2013, at book/page 49869/1715. *See* ECF No. [7-4] (the "Subordinate Mortgage").[2] The Subordinate

---

[2] The Court takes judicial notice of the recorded Subordinate Mortgage, which is also referenced and relied upon by Plaintiffs in their Complaint and in their Notice and Request (defined below) submitted with and incorporated into their Complaint. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (court may take judicial notice of public filings "for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents"); *Henderson v. BAC Home Loans Servicing, LP*, 2011 WL 10843391, at *8 (N.D. Ga. June 29, 2011) (taking judicial notice of publically filed mortgage note assignment where

Mortgage does not itself purport to reinstate or modify the terms of Plaintiffs' prior mortgage serviced by Nationstar and subject of the Foreclosure Action. *Id*. Rather, the Subordinate Mortgage requires that Plaintiffs "perform all of [Plaintiffs'] obligations under the First Mortgage . . . including [Plaintiffs'] covenants to make payments when due." *Id*. ¶ 4.

In May 2013, as a result of Plaintiffs' participation in the Program and the funds made available thought the FHFC loan, funds were disbursed to Nationstar on Plaintiffs' behalf that, Plaintiffs allege, "were sufficient to reinstate their mortgage and bring their account current." Compl. ¶ 10. The Program "also made additional funds available to make a number of future periodic monthly payments as they became due." *Id*. However, Plaintiffs allege, Nationstar failed to properly credit or apply the disbursed funds to Plaintiffs' mortgage loan account or balance. *Id*. ¶ 23.

In March 2014, after Plaintiffs were approved to enter into the Florida Hardest Hit Program and the execution of the Subordinate Mortgage, Plaintiffs filed a motion before the State Court in the Foreclosure Action to vacate the foreclosure sale, rescind the certificate of title issued to Nationstar, and reissue a certificate of title to Plaintiffs, due to the pending loss mitigation process. *See* Foreclosure Action Docket. On March 14, 2014, Plaintiffs filed a complaint with the federal Consumer Financial Protection Bureau ("CFPB"). Compl. ¶ 15; *see* ECF No. [7-5] (CFPB Complaint). The CFPB Complaint alleges that Plaintiffs' "servicer, Nationstar Mortgage LLC and Florida Hardest Hit reached an agreement to reinstate the loan for $18,000 which payment was made on May 23, 2013;" that "[m]onthly payments from Florida Hardest Hit" of $1,590.27 began in May of 2013; that the property was nevertheless "sold at a foreclosure sale on December 12, 2013;" that "Nationstar ha[d] accepted a payment as recently

---

not contradicted by non-conclusory allegations in the complaint); *Funderburk v. Fannie Mae*, 2014 WL 1292650, at *1 n.1 (N.D. Ga. Mar. 28, 2014) (taking judicial notice on motion to dismiss of public records not attached to the complaint, including a note, security deed, and assignment contract).

as February 26, 2014; and that "[b]y April of 2014, Nationstar will have accepted $42,000 while processing [sic] the home through a sale." CFPB Compl. In the CFPB Complaint, Plaintiffs requested that title in their property be restored back to their names immediately, and further requested punitive action against Nationstar. *Id*.

By letter dated March 28, 2014, Nationstar responded to Plaintiffs' CFPB Complaint. Compl. ¶ 17; ECF No. [1-4] (Nationstar Letter). Therein, Nationstar stated

> We have conducted an investigation and corrected the error asserted within the received correspondence. Pursuant to the research performed, our records indicate there is an active Hardest Hit Funds (HHF) plan for the above account; furthermore, we have concluded the foreclosure sale has been scheduled for rescission. The hearing for the motion to vacate the foreclosure sale is scheduled for April 16, 2014, and a decision will be made at the time of the hearing. The details of the hearing will be available after April 16, 2014.

Nationstar Letter at 1. On April 16, 2014, Plaintiffs obtained an order from the State Court in the Foreclosure Action vacating the December 2013 foreclosure sale and the January 2014 certificate of title. Compl. ¶ 18; Foreclosure Action Docket. Neither before the State Court nor in the CFPB Complaint did Plaintiffs request vacation of the foreclosure judgment. The State Court did not vacate its foreclosure judgment, and rescheduled the foreclosure sale for August 2014. Compl. ¶ 18; Foreclosure Action Docket.

On April 2, 2014, Plaintiffs invoked the error resolution procedures established by RESPA and Regulation X – which became effective on January 10, 2014 – by sending Nationstar a Qualified Written Request Containing Both a Notice of Error and Request for Information, via certified mail, consisting of a letter and incorporating several attachments. Compl. ¶ 10; *see* ECF No. [1-3] (Notice and Request). The Notice and Request replicated the facts set forth above and in the CFPB Complaint regarding Plaintiffs' participation in the Florida Hardest Hit Program and the sale through the Foreclosure Action, and stated that "it was an error

5

for Nationstar to accept these funds [disbursed through the Florida Hardest Hit Program] in May [2013] and the months thereafter and still proceed with the foreclosure sale in December [2013]." Notice and Request at 1-2. Plaintiffs demanded that Nationstar cooperate with Plaintiffs' motion then pending before the State Court to vacate the foreclosure sale. *Id*. at 2. The Notice and Request averred that Plaintiffs' mortgage account statement "indicate[d] a negative escrow balance in $50,639.01," and Plaintiffs requested "that Nationstar provide an itemization of all amounts that it claims justify the $50,539.01 escrow deficiency." *Id*.

Plaintiffs allege that, "[a]s part of a condition to the advancement of the Hardest Hit funds on [Plaintiffs'] behalf, Nationstar was required to agree to the express condition that Nationstar accept those funds and agree that amount [sic] of the Hardest Hit funds initially advanced [of $18,000] was sufficient to reinstate [Plaintiffs'] mortgage as current." Compl. ¶ 13. Plaintiffs allege that Nationstar never responded in any way to the Notice and Request. Compl. ¶ 16. They further allege that Nationstar failed to take any measures to vacate the foreclosure judgment entered by the State Court, or the foreclosure sale order by the State Court, in the Foreclosure Action. Compl. ¶ 11. Plaintiffs do not allege that they sought a modification of their home mortgage or recommenced mortgage payments following the expiration of the Florida Hardest Hit Program payments to Nationstar. As of the date this action was commenced, the State Court had set the foreclosure sale for January 8, 2015. *See* Foreclosure Action Docket.

Plaintiffs' Complaint asserts three causes of action: (I) violation of RESPA and its implementing Regulation X by Nationstar in "failing to correct its admitted failure to properly credit the Hardest Hit funds, and to take reasonable measures to avoid the [re-scheduled] foreclosure sale," Compl. ¶¶ 19, 23; (II) violation of RESPA and its implementing Regulation X by Nationstar in failing to respond to Plaintiffs request for information; and (III) "willful wanton negligence"

6

(an oxymoron if ever there was one) by Nationstar in abrogating their duties to "reasonably investigate the concerns raised" in, and to "timely respond" to, the Notice and Request. Compl. ¶ 33. The Complaint additionally seeks declaratory relief (Count IV) under Fla. Stat. § 86.011 *et seq.* that Nationstar failed to comply with RESPA and Regulation X.

## II.   DISCUSSION

Nationstar seeks dismissal of the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). It argues that it complied with its response obligations under Regulation X with respect to Plaintiffs' Notice and Request, and that Plaintiffs' information request allegations are barred by *res juicata* and the Rooker-Feldman doctrine.

### A.   Standard for Dismissal for Failure to State a Claim

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, (2002). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a

7

claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true." ); *Iqbal*, 556 U.S. at 678. A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Further, conclusory allegations and unwarranted deductions of fact are not entitled to an assumption of truth. *Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010); *Amer. Dental Ass'n v. Cigna*, 605 F.3d 1283, 1290 (11th Cir. 2010); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004). "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief.'" *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### B. Plaintiffs Do Not Plausibly Allege That Nationstar Was Obligated to Reinstate Their Mortgage Loan

The parties spill considerable ink contesting whether Nationstar was obligated to reinstate Plaintiffs' mortgage loan as a condition for or in connection with Nationstar's receipt of the FHFC's loan proceeds. Plaintiffs specifically allege that it was. Nationstar vehemently disputes the allegation as both legally incorrect and factually unsupported. Ultimately, the issue is not dispositive of Nationstar's Motion. That said, Plaintiffs' allegation is both contradicted by law and conclusory.

Plaintiffs assert that "[a]s part of a condition to the advancement of the Hardest Hit funds on [Plaintiffs'] behalf, Nationstar was required to agree to the express condition that Nationstar accept those funds and agree that amount [sic] of the Hardest Hit funds initially advanced [of $18,000] was sufficient to reinstate [Plaintiffs'] mortgage as current." Compl. ¶ 13. This mirrors their allegation in the CFPB Complaint that Nationstar and "Florida Hardest Hit reached an agreement to reinstate the loan for $18,000." The thrust of Plaintiffs' allegation is that Nationstar was required to reinstate their loan as part of the Florida Hardest Hit Program. Their contention is legally baseless. Nowhere in the FHFC rules governing the Program, FLA. ADMIN CODE R. 67-59.001, *et seq.*, or in the Manual is the mortgage loan servicer required to bring current, reinstate or modify a FHFC loan recipient's mortgage loan – either as a condition for receiving funds from the FHFC on the borrower's behalf or otherwise. The explicit purpose of the Program is to provide "temporary assistance to eligible" persons by "facilitating mortgage loan modifications to prevent avoidable foreclosures." FLA. ADMIN CODE R. 67-59.001 and HFA Participation Agreement, FHHF-01 Rev 8/13, adopted and incorporated into Rule 67-59.001 by

9

reference and available at http://www.flrules.org/Gateway/ reference.asp?No=Ref-03411. That is, the monthly and/or reinstatement payments made available through the Program are designed to facilitate the borrower's efforts to seek reinstatement or modification of her mortgage loan. The Program does not guaranty that a borrower will achieve, or require of the servicer, either result.

In fact, the only reference to action by the servicer in the governing rules is the servicer's determination whether or not to accept payments on behalf of the borrower. Assistance under the Program in the form of an FHFC loan is available only to borrowers whose mortgage servicers have not declined acceptance. FLA. ADMIN CODE R. 67-59.050(1). That is, "[t]he servicer has a right to determine if they will accept payment on behalf of the homeowner." Manual at 17. Plaintiffs' allegation that "Nationstar was required to agree to the express condition that Nationstar accept [the loan FHFC loan proceed] funds" is legally untenable.

Plaintiffs have not pointed to any contractual obligation by Nationstar to reinstate Plaintiffs' mortgage loan as a condition to receiving the FHFC loan proceeds. The only agreement referenced in the Complaint is the Subordinate Mortgage. Rather than requiring reinstatement, forgiveness or modification by Nationstar, Plaintiffs' Subordinate Mortgage with the FHFC required Plaintiffs to continue to honor their obligations to Nationstar under their mortgage loan – including to make payments when due.

To the extent Plaintiffs allege that Nationstar was required to reinstate Plaintiffs' loan by the FHFC rules governing the Program, their allegation amounts to an erroneous legal conclusion which the Court is obligated to reject. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. To the extent Plaintiffs claim that Nationstar otherwise obligated itself to reinstate the loan, that

assertion is wholly conclusory and without any basis in supporting factual allegations. *See Randall*, 610 F.3d at 709; *Amer. Dental Ass'n*, 605 F.3d at 1290; *Jackson*, 372 F.3d at 1263.

### C. Nationstar Complied With Its Notice Response Obligations

Because the facts as alleged demonstrate that Nationstar fulfilled its obligations under the error resolution procedures of Regulation X, Plaintiffs fail to state a claim in Count I of their Complaint.

The error resolution procedures articulated in section 1024.35 of Regulation X require servicers to comply with certain obligations upon written notice from the borrower asserting error on the part of the servicer. *See* 12 C.F.R. § 1024.35(a). In response to a notice of error:

> Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:
>
> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i), Section 1024.35(g) provides, in relevant part:

> A servicer is not required to comply with the requirements of paragraphs (d), (e), and (i) of this section if the servicer reasonably determines that . . . [t]he asserted error is substantially the same as an error previously asserted by the borrower for which the servicer has previously complied with its obligation to respond pursuant to paragraphs (d) and (e) of this section, unless the borrower provides new and material information to support the asserted error. New and material information means information that was not reviewed by the servicer in connection with investigating a prior notice of the same error and is reasonably likely to change the servicer's prior determination about the error.

12 C.F.R. § 1024.35(g)(1)(i).

11

As the Complaint and its attendant filings make clear, Nationstar fully complied with its obligations to respond to Plaintiffs' notice of error in the April 2, 2014 Notice and Request by responding to and correcting the error of which Plaintiffs notified Nationstar in the CFPB Complaint dated March 14, 2014.

The CFPB Complaint put Nationstar on notice that the December 2013 foreclosure sale was wrongly proceeded during the pendency of Plaintiffs' loss mitigation process – i.e., after Nationstar had accepted and while it continued to accept FHFC loan proceeds as mortgage loan payments on Plaintiffs' behalf. This obligated Nationstar to either correct the alleged error and notify Plaintiffs of the correction, pursuant to 12 C.F.R. § 1024.35(e)(1)(i)(A), or to investigate and provide Plaintiff with a written notification stating its determination that no error occurred and a reason for that determination, along with other information, pursuant to 12 C.F.R. § 1024.35(e)(1)(i)(B). In the Nationstar Letter, dated March 28, 2014, Nationstar acceded to the alleged error – that the foreclosure sale went forward despite Plaintiffs' ongoing participation in the Florida Hardest Hit Program. The Letter further notified Plaintiffs that the foreclosure sale had been scheduled for rescission. The December 2013 foreclosure sale was then vacated, and the January 2014 certificate of title rescinded, by the State Court in the Foreclosure Action.

Plaintiffs' notice of error and request for corrective action in the Notice and Request was identical to that contained in the CFPB Complaint. In their motion before the State Court, in the CFPB Complaint, and in the Notice and Request, Plaintiffs asserted that the foreclosure *sale* was improper, and sought to have that sale and its effects vacated. Nowhere prior to their Complaint in the instant action did Plaintiffs demand that the underlying foreclosure *judgment* be vacated, or that Nationstar take measures to vacate that judgment.

12

Given the identity of the alleged misconduct and the requested relief between the CFPB Complaint and the Notice and Request, it was reasonable for Nationstar to determine that the errors asserted in the Notice and Request were duplicative of errors as to which Nationstar had previously complied with its obligation to respond in its Letter and through its participation in the Foreclosure Action. *See* 12 C.F.R. § 1024.35(g)(1)(i). Plaintiffs demanded that the foreclosure sale be vacated. It was.

Plaintiffs' additional allegation that Nationstar failed to credit their mortgage account or reduce their loan balance in accordance with the funds advanced on their behalf under the Florida Hardest Hit Program rings hollow. As Plaintiffs allege and as the Nationstar Letter and the State Court proceedings confirm, Nationstar acknowledged its error in handling Plaintiffs' mortgage with respect to the Program funds and the December 2013 foreclosure sale was vacated. It appears highly unlikely that Nationstar would have recognized its error in writing to Plaintiffs and acceded to the foreclosure sale reversal while still failing to credit Plaintiffs' loan with the Program funds. Regardless, that failure cannot substantiate Plaintiffs' claim brought here – for violation of RESPA in connection with the Notice and Request. Even if Nationstar failed to credit Plaintiffs' account, they still complied with the demands in and responsive obligations triggered by the Notice and Request. The full amount of the FHFC loan proceeds would not alone have rescued Plaintiffs' defaulted mortgage loan. As explained above, Nationstar was not required to reinstate Plaintiffs' loan. And Plaintiffs do not allege that they did anything to secure reinstatement or modification of their mortgage. That said, nothing in this opinion and order prevents Plaintiffs from asserting a viable claim against Nationstar based on Nationstar's purported failure to credit their mortgage loan with the funds advanced under the Program.

Finally, Plaintiffs' allegations that Nationstar has not acted to vacate the foreclosure judgment, or taken any steps to avoid the rescheduled foreclosure sale, are both irrelevant to their cause of action under RESPA and Regulation X. Even if Nationstar was obligated to do either – and Plaintiffs have not indicated why it would be – Plaintiffs did not complain of those "errors" in either the CFPB Complaint or the Notice and Request.

Accordingly, Count I of Plaintiffs' Complaint is dismissed with prejudice.

### D. Plaintiffs' RESPA Claim Based On Their Request for Information Fails

In addition to their notice of error, Plaintiffs included in the Notice and Request a request for information. Specifically, the Notice and Request stated that Plaintiffs' mortgage account statement "indicate[d] a negative escrow balance in $50,639.01," and requested "that Nationstar provide an itemization of all amounts that it claims justify the $50,539.01 escrow deficiency." Plaintiffs allege that Nationstar failed to respond to the information request. Nationstar has raised several arguments for dismissal of Count II,[3] including that Plaintiffs' information request allegations are barred by *res juicata* and the Rooker-Feldman doctrine. Without addressing those arguments, because Plaintiffs cannot allege that they suffered any actual damages as a result of Nationstar's alleged RESPA violation, their claim must be dismissed.

#### 1. Servicers' Request Response Obligations

Section 1024.36 of Regulation X requires servicers to respond to a borrower's requests for information by either:

> (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

---

[3] Count III of the Complaint, which claims that Nationstar acted with "willful wanton negligence" in failing to investigate concerns raised in the Notice and Request and in neglecting to respond to Plaintiffs' request for information, and that Nationstar's "negligent acts were willful, wanton and reckless," is duplicative of the two previous Counts.

> (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1). The regulations provide, relative to the request here, a thirty day response time. *Id*. § 1024.36(D)(2)(i)(B).

Taking the allegations in the Complaint as true, Nationstar – in failing to respond at all to Plaintiffs' request for information concerning the escrow amounts – did not adhere to the requirements of section 1024.36.

### 2. RESPA Requires Actual Damages Resulting From Nationstar's Alleged Violation

RESPA allows for damages relating to information requests from borrowers to servicers in "an amount equal to the sum of – (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1). In order to state a claim for a violation of section 2605, a plaintiff must allege that the breach resulted in actual damages. *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 241 (5th Cir. 2014). "While courts have interpreted this requirement liberally, the loss alleged must be related to the RESPA violation itself." *Hopson v. Chase Home Fin. LLC*, 2014 WL 1411811 (S.D. Miss. Apr. 11, 2014) (quoting *Hensley v. Bank of New York Mellon*, 2011 WL 4084253, at *3-4 (E.D. Cal. Sept. 13, 2011). *See also Yates v. GMAC Mortg. LLC*, 2010 WL 5316550 at *4 (N.D. Ga. Dec. 17, 2010) (dismissing RESPA claim with prejudice because plaintiff failed to "articulate any facts showing how Defendant's failure to respond or inadequate response to the RESPA requests resulted in any damages or the amount of such damages"); *Ghuman v. Wells Fargo Bank, N.A.*, 989 F. Supp. 2d 994, 1007 (E.D. Cal.

2013) ("A RESPA claim's failure to allege a pecuniary loss resulting from a failure to respond is fatal to the claim."); *Jones v. Vericrest Fin., Inc.*, 2011 WL 7025915, at *19 (N.D. Ga. Dec. 7, 2011) (finding that even if plaintiff had sufficiently alleged that defendant violated RESPA by failing to adequately respond to a written request, RESPA claim would still be dismissed since "the Plaintiff has not included any factual allegations explaining how [defendant's] failure to provide an adequate response to the qualified written response caused her to suffer any damages"); *Watts v. Federal Home Loan Mort. Corp.*, 2012 WL 6928124, at *5 (D. Minn. Oct. 30, 2012) (dismissing RESPA claim since "[e]ven if [plaintiff's] correspondence was a qualified written request, which it was not, [plaintiff] failed to allege actual damages."); *Phillips v. Bank of America Corp.*, 2011 WL 4844274 at *5 (N.D. Cal. Oct. 11, 2011) (dismissing plaintiff's RESPA claim because plaintiff failed to allege facts showing "that it is plausible, rather than merely possible" that the claimed damages resulted from defendant's alleged violation of RESPA); *Allen v. United Financial Mortgage Corp.*, 660 F. Supp. 2d 1089, 1096 (N.D. Cal. 2009) ("Alleging a breach of RESPA duties alone does not state a claim under RESPA.").

### 3. Plaintiffs Cannot Allege Actual Damages Resulting From Nationstar's Alleged Violation

Plaintiffs allege that they "sustained actual damages as a result of Nationstar's non-compliance" with their information request.  Compl. ¶ 30.  They specifically list the "costs associated with preparing and sending their request for information, and additional debt and finance charges" related to their inability "to correct the errors affecting their escrow account."  *Id*.  Their claim is impossible to maintain.

In the Foreclosure Judgment, the State Court determined that Plaintiffs defaulted on a date certain, failed to cure, and owe a fixed amount of principal, interest, and escrowed amounts to Nationstar.  The State Court adjudged the amounts advanced for unpaid escrows at the time of

judgment – which included taxes, hazard insurance and inspections – at $28,055.44.  The State Court further determined that Nationstar was entitled to recover any further costs incurred in the Foreclosure Action – including any advances made by Nationstar under the terms of the note and mortgage agreement, such as additional amounts advanced for unpaid escrows.  *See* Foreclosure Judgment at 2.

Plaintiffs' information request asked Nationstar to "justify" the outstanding escrow balance when that issue had already been adjudicated against Plaintiffs and in favor of Nationstar by the State Court in 2010.  It is unclear what information Nationstar could have provided Plaintiffs to "justify" a state court final judgment.  But, assuming the regulations at issue obligated Nationstar to investigate and justify the State Court's judgment (or, perhaps, simply to respond in some way to Plaintiffs' request); and taking as true Plaintiffs' allegation that Nationstar did not do so; whatever damages Plaintiffs suffered resulted directly from the State Court's Foreclosure Judgment – *not* from Nationstar's alleged inaction in violation of RESPA.

Nationstar could not have provided Plaintiffs with any information that would have mitigated the damages they claim to have suffered.  The escrow amounts due and owing Nationstar by Plaintiffs was determined by the State Court.  It is a matter of public record in a case where Plaintiffs are the sole named defendants and in which they continue to participate to this day.  Nationstar's alleged RESPA violation could not have resulted in actual damages to Plaintiffs under the facts Plaintiffs allege.  As such, Plaintiffs' claim for violation of RESPA are dismissed with prejudice.

### E. There Are No Grounds For Declaratory Relief

Declaratory relief is a procedural device which depends on an underlying substantive cause of action and cannot stand on its own.  *See Rosenbaum v. Becker & Poliakoff, P.A.*, 2010

WL 376309, at *8 (S.D. Fla. Jan. 26, 2010) ("[D]eclaratory relief is a mere procedural device by which various types of substantive claims may be vindicated." (quoting *Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963)); *Robb v. Rahi Real Estate Holdings LLC*, 2011 WL 2149941 at *8 (S.D. Fla. May 23, 2011) (dismissing claim for declaratory judgment because "[t]he only outstanding claim that has not been dismissed with prejudice, declaratory judgment [], cannot stand on its own"); *Zolin v. Caruth*, 2009 WL 2982907, at *7 (N.D. Fla. Sept. 14, 2009) ("[T]he Declaratory Judgment Act does not establish an independent cause of action, it is procedural only and merely establishes a legal remedy available in cases brought pursuant to some other law.") *Kennedy v. Trustmark Nat. Bank*, 2006 WL 140707, at *7 (N.D. Fla. Jan. 17, 2006) (dismissing request for declaratory relief derivative of underlying substantive issues which were dismissed). Because Plaintiffs' substantive claims do not survive, their derivative request for declaratory relief must be dismissed.

### III. CONCLUSION

For the forgoing reasons and as detailed above, it is hereby **ORDERED AND ADJUDGED** that:

1. Nationstar's Motion to Dismiss, ECF No. [7], is **GRANTED**.
2. Plainitffs' Complaint, ECF No. [1] is **DISMISSED with prejudice**.
3. The Clerk is directed to **CLOSE** this case. Any pending motions are **DENIED as MOOT**. Any impending deadlines are **TERMINATED**.

**DONE AND ORDERED** at Chambers in Fort Lauderdale, Florida, this 7th day of January, 2015.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record