## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 14-CIV-61786-BLOOM

FREIDRICK EVEILLARD and
NIRAIDA EVEILLARD

      Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC,
A Foreign Corporation,

      Defendant.

_____/

### ORDER DENYING MOTION FOR RECONSIDERATION AND
### GRANTING LEAVE TO AMEND

**THIS CAUSE** is before the Court on Plaintiffs Freidrick and Niraida Eveillard's

("Plaintiffs") Motion for Reconsideration, ECF No. [27].  The Court has reviewed the Motion,

all supporting and opposing filings, and the record in this case, and is otherwise fully advised as

to the premises.   For the reasons set forth below, the Court denies the Motion for

Reconsideration but grants Plaintiffs leave to amend pursuant to Fed. R. Civ. P. 15.

### I.   BACKGROUND

Plaintiffs filed their Complaint, ECF No. [1], on August 5, 2014.  Defendant Nationstar

Mortgage LLC ("Nationstar") filed its Motion to Dismiss, ECF No. [7], on October 28, 2014.

That motion became ripe for adjudication on December 19, 2014.  On January 7, 2014, the Court

entered its memorandum opinion and order granting Nationstar's motion and dismissing all four

counts asserted in the Complaint with prejudice.   ECF No. [26] (the "Order"); *Eveillard v.

Nationstar Mortgage LLC*, 2015 WL 127893 (S.D. Fla. Jan. 8, 2015).  The instant Motion for

Reconsideration followed, less than twenty eight days from issuance of the Order.

Plaintiffs hope to rehabilitate their claims against Nationstar for alleged violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA") and its implementing regulations, 12 C.F.R. part 1024 ("Regulation X").  Familiarity with the factual background and law of the case is assumed.[1]

Restating certain facts briefly, Plaintiffs alleged that Nationstar failed to comply with the requirements of RESPA and Regulation X by neglecting to respond to their notice of error and request for information.

In September 2008, following Plaintiffs' non-payment default on their mortgage, Nationstar commenced the Foreclosure Action.  Plaintiffs did not respond.  The State Court entered a final judgment of foreclosure against Plaintiffs and in favor of Nationstar on June 10, 2010; the total due and owing Nationstar was adjudged by the State Court to be $270,836.97. The foreclosure sale, delayed by two bankruptcy filings and associated cancellations, proceeded on December 12, 2013.

In May 2013, Plaintiffs were approved to participate in the Florida Hardest Hit Program. To secure advancement of $42,000 in Hardest Hit funds to Nationstar, Plaintiffs executed the Subordinate Mortgage in favor of the FHFC.  As a result of Plaintiffs' participation in the Program and the funds made available through the FHFC loan, funds were disbursed to Nationstar on Plaintiffs' behalf.

In March 2014, Plaintiffs filed a motion before the State Court in the Foreclosure Action to vacate the foreclosure sale, rescind the certificate of title issued to Nationstar, and reissue a certificate of title to Plaintiffs, due to the pending loss mitigation process.

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Order.

On March 14, 2014, Plaintiffs filed a complaint with the federal Consumer Financial Protection Bureau.  The CFPB Complaint alleged as follows:

> Court case number CACE08043901 was filed on September 17, 2008.  The servicer, Nationstar Mortgage LLC and Florida Hardest Hit reached an agreement to reinstate the loan for $18,000 which payment was made on May 23, 2013.  Monthly payments from Florida Hardest Hit began in May of 2013 in the amount of $1,590.27.  The property was sold at a foreclosure sale on December 12, 2013.  Based upon information and belief Nationstar has accepted a payment as recently as February 26, 2014.  By April of 2014, Nationstar Mortgage, LLC will have accepted $42,000 while processing the home through a sale.   Nationstar Mortgage, LLC offers Hardest Hit funds as part of its mitigation home retention options.  The Florida Housing Finance Corporation has recorded a lien on June 10, 2013, on the property.  The mortgage lien is dated May 13, 2013 and is for $42,000.  Certificate of Title was issued on January 24, 2014, ten days after 12 CFR 1024.41 became effective.  The property was sold while the Eveillards were in an active loss mitigation home retention option and Nationstar Mortgage LLC continued to accept Hardest Hit Funds nearly three months after the foreclosure sale occurred.  I am afraid that if immediate action is not taken I will be kicked out of my home while Nationstar Mortgage LLC still accepts funds from Florida Hardest Hit.

Plaintiffs requested that title in their property be restored back to their names immediately, and further requested punitive action against Nationstar.

By letter dated March 28, 2014, Nationstar responded to Plaintiffs' CFPB Complaint.  In the Nationstar Letter, Nationstar stated:

> We have conducted an investigation and corrected the error asserted within the received correspondence.  Pursuant to the research performed, our records indicate there is an active Hardest Hit Funds (HHF) plan for the above account; furthermore, we have concluded the foreclosure sale has been scheduled for rescission.  The hearing for the motion to vacate the foreclosure sale is scheduled for April 16, 2014, and a decision will be made at the time of the hearing.  The details of the hearing will be available after April 16, 2014.

On April 2, 2014, invoking the error resolution procedures established by RESPA and Regulation X, Plaintiff sent Nationstar the Notice and Request.  Replicating the facts set forth in the CFPB Complaint regarding Plaintiffs' participation in the Florida Hardest Hit Program and the sale through the Foreclosure Action, the Notice and Request stated as follows:

>After Mr. Eveillard fell behind on his mortgage payments, a mortgage foreclosure lawsuit was initiated against him.  At or near the beginning of that lawsuit, Nationstar was servicing the loan and became the party the party plaintiff in the foreclosure action.  On June 10th, 2010 a foreclosure judgment was entered in favor of Nationstar.  A sale was scheduled, but then canceled due to Mr. Eveillard filing for bankruptcy.  The same thing happened again in 2012.  However, on January 17th, 2013, the foreclosure sale was rescheduled by court order for March 19th, 2013, but that sale was once again cancelled and reset at Nationstar's request.  The sale finally occurred on December 12th, 2013 and a certificate of title was issued to Nationstar on January 24th 2014.
>
>Meanwhile, on May 13th, 2013, Mr. Eveillard was approved for assistance through the Florida Hardest Hit Fund, a true and correct copy of the approval letter is attached [to the Notice and Request] as Attachment "A."  Importantly, that letter states that Mr. Eveillard's "... servicer had indicated [his] current arrearage is $18,000.  As the computer generated records attached [to the Notice and Request] as Attachment "B" demonstrate, the Hardest Hit Fund issued an $18,000 reinstate payment to Nationstar on May 23rd, 2014, and began making the monthly payments on Mr. Eveillard's behalf.  Nationstar accepted all of those payments, most of which were made before the December 12th, 2013 foreclosure sale.  These funds are secured by a promissory note and subordinate mortgage that Mr. Eveillard and his wife executed in favor of the Florida Housing Finance Corporation.  Clearly, it was an error for Nationstar to accept these funds in May and the months thereafter and still proceed with the foreclosure sale in December.  Mr. Eveillard, with the assistance of the Legal Aid Service of Broward County has filed a motion asking the Court to vacate that sale.

The Notice and Request demanded that, "[i]n addition to investigating and correcting this error, . . . Nationstar instruct its counsel to be cooperative with Mr. Eveillard's pending motion to vacate the sale."  It further averred that Plaintiffs' mortgage account statement "indicate[d] a negative escrow balance in $50,639.01," and Plaintiffs requested "that Nationstar provide an itemization of all amounts that it claims justify the $50,539.01 escrow deficiency."

On April 16, 2014, Plaintiffs obtained an order from the State Court in the Foreclosure Action vacating the December 2013 foreclosure sale and the January 2014 certificate of title. Neither before the State Court nor in the CFPB Complaint did Plaintiffs request vacation of the foreclosure judgment.  The State Court did not vacate its foreclosure judgment, and rescheduled

the foreclosure sale for August 2014.  As of the date this action was commenced, the State Court

had set the foreclosure sale for January 8, 2015.

In the Order, the Court held that Nationstar fully complied with its obligations to respond

to Plaintiffs' notice of error in the Notice and Request by responding to and correcting the error

of which Plaintiffs notified Nationstar in the CFPB Complaint.  As the Court explained:

> The CFPB Complaint put Nationstar on notice that the December 2013
> foreclosure sale was wrongly proceeded during the pendency of Plaintiffs' loss
> mitigation process – i.e., after Nationstar had accepted and while it continued to
> accept FHFC loan proceeds as mortgage loan payments on Plaintiffs' behalf.
> This obligated Nationstar to either correct the alleged error and notify Plaintiffs of
> the correction, pursuant to 12 C.F.R. § 1024.35(e)(1)(i)(A), or to investigate and
> provide Plaintiff with a written notification stating its determination that no error
> occurred and a reason for that determination, along with other information,
> pursuant to 12 C.F.R. § 1024.35(e)(1)(i)(B).   In the Nationstar Letter, dated
> March 28, 2014, Nationstar acceded to the alleged error – that the foreclosure sale
> went forward despite Plaintiffs' ongoing participation in the Florida Hardest Hit
> Program.  The Letter further notified Plaintiffs that the foreclosure sale had been
> scheduled for rescission.  The December 2013 foreclosure sale was then vacated,
> and the January 2014 certificate of title rescinded, by the State Court in the
> Foreclosure Action.  . . . Given the identity of the alleged misconduct and the
> requested relief between the CFPB Complaint and the Notice and Request, it was
> reasonable for Nationstar to determine that the errors asserted in the Notice and
> Request were duplicative of errors as to which Nationstar had previously
> complied with its obligation to respond in its Letter and through its participation
> in the Foreclosure Action.   Plaintiffs demanded that the foreclosure sale be
> vacated.  It was.

Order at 12-13 (citation omitted).  Regarding Plaintiffs' allegation that Nationstar failed to credit

their mortgage account or reduce their loan balance in accordance with the funds advanced on

their behalf under the Florida Hardest Hit Program, the Court explained further:

> As Plaintiffs allege and as the Nationstar Letter and the State Court proceedings
> confirm, Nationstar acknowledged its error in handling Plaintiffs' mortgage with
> respect to the Program funds and the December 2013 foreclosure sale was
> vacated.  It appears highly unlikely that Nationstar would have recognized its
> error in writing to Plaintiffs and acceded to the foreclosure sale reversal while still
> failing to credit Plaintiffs' loan with the Program funds.  Regardless, that failure
> cannot substantiate Plaintiffs' claim brought here – for violation of RESPA in
> connection with the Notice and Request.  Even if Nationstar failed to credit

> Plaintiffs' account, they still complied with the demands in and responsive obligations triggered by the Notice and Request.  The full amount of the FHFC loan proceeds would not alone have rescued Plaintiffs' defaulted mortgage loan. As explained above, Nationstar was not required to reinstate Plaintiffs' loan.  And Plaintiffs do not allege that they did anything to secure reinstatement or modification of their mortgage.  That said, nothing in this opinion and order prevents Plaintiffs from asserting a viable claim against Nationstar, in this forum or elsewhere, based on Nationstar's purported failure to credit their mortgage loan with the funds advanced under the Program.

Order at 13.

The Court further explained that Plaintiffs could not state a RESPA claim for Nationstar's alleged failure to respond to Plaintiffs' request for information:

> Plaintiffs allege that they "sustained actual damages as a result of Nationstar's non-compliance" with their information request.  Compl. ¶ 30.  They specifically list the "costs associated with preparing and sending their request for information, and additional debt and finance charges" related to their inability "to correct the errors affecting their escrow account."  *Id.*  Their claim is impossible to maintain.
>
> In the Foreclosure Judgment, the State Court determined that Plaintiffs defaulted on a date certain, failed to cure, and owed a fixed amount of principal, interest, and escrowed amounts to Nationstar.  The State Court adjudged the amounts advanced for unpaid escrows at the time of judgment – which included, e.g., taxes, hazard insurance and inspections – at $28,055.44.  The State Court further determined that Nationstar was entitled to recover any further costs incurred in the Foreclosure Action – including any advances made by Nationstar under the terms of the note and mortgage agreement, such as additional amounts advanced for unpaid escrows.  *See* Foreclosure Judgment at 2.
>
> Plaintiffs' information request asked Nationstar to "justify" the outstanding escrow balance when that issue had already been adjudicated against Plaintiffs and in favor of Nationstar by the State Court in 2010.  It is unclear what information Nationstar could have provided Plaintiffs to "justify" a state court final judgment.  But, assuming the regulations at issue obligated Nationstar to investigate and justify the State Court's judgment (or, perhaps, simply to respond in some way to Plaintiffs' request); and taking as true Plaintiffs' allegation that Nationstar did not do so; whatever damages Plaintiffs suffered resulted directly from the State Court's Foreclosure Judgment – *not* from Nationstar's alleged inaction in violation of RESPA.
>
> Nationstar could not have provided Plaintiffs with any information that would have mitigated the damages they claim to have suffered.  The escrow amounts due and owing Nationstar by Plaintiffs was determined by the State Court.  It is a matter of public record in a case where Plaintiffs are the sole named defendants

and in which they continue to participate to this day.  Nationstar's alleged RESPA violation could not have resulted in actual damages to Plaintiffs, under the facts Plaintiffs allege.  Plaintiffs' claim for violation of RESPA must therefore be dismissed, with prejudice.

Order at 16-17.

Finally, the Court explained that Plaintiffs' negligence claim was duplicative of their RESPA claims, and held that "[b]ecause Plaintiffs' substantive claims do not survive, their derivative request for declaratory relief must be dismissed."  Order at 14 n.3; 18.

The Court, therefore, dismissed with prejudice all four counts asserted in Plaintiffs' Complaint:  (I) violation of RESPA and its implementing Regulation X by Nationstar in "failing to correct its admitted failure to properly credit the Hardest Hit funds, and to take reasonable measures to avoid the [re-scheduled] foreclosure sale;" (II) violation of RESPA and its implementing Regulation X by Nationstar in failing to respond to Plaintiffs request for information; (III) "willful wanton negligence" by Nationstar in abrogating their duties to "reasonably investigate the concerns raised" in, and to "timely respond" to, the Notice and Request; and (IV) declaratory relief under Fla. Stat. § 86.011 *et seq.* that Nationstar failed to comply with RESPA and Regulation X.

Attached to Plaintiffs Motion is a proposed Amended Complaint, ECF No. [27-1], which again contains four claims against Nationstar:  (I) violation of RESPA and its implementing Regulation X by failing to respond to the notice of error in the Notice and Request; (II) violation of RESPA and its implementing Regulation X by failing to respond to the request for information in the Notice and Request; (III) negligence in failing to "to reasonably investigate the concerns raised" in the Notice and Request, "fail[ing] to provide information concerning highly questionable escrow charges related to the servicing of Borrowers' loan," and "fail[ing] to investigate and correct the apparent errors regarding the application of the Hardest Hit funds,"

Am. Compl. ¶¶ 35-37; and (IV) and declaratory relief "that Nationstar failed to comply with the RESPA/Regulation X error resolution procedures and it must perform an adequate investigation concerning these issues and provide Plaintiffs with a substantive response concerning that investigation including a description of any corrections that it made, and the effective date of those corrections."  Am. Compl. ¶ 46.

## II.   STANDARD

Plaintiffs seek reconsideration of the Order pursuant to Fed. R. Civ. P. 59(e).  "While Rule 59(e) does not set forth any specific criteria, the courts have delineated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice."  *Williams v. Cruise Ships Catering & Serv. Int'l, N.V.*, 320 F. Supp. 2d 1347, 1357-58 (S.D. Fla. 2004) (citing *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994)); *see also Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002) ("[T]here are three major grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice").

"[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  *Wendy's Int'l, Inc. v. Nu-Cape Const., Inc.*, 169 F.R.D. 680, 685 (M.D. Fla. 1996); *see also Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012) ("A motion for reconsideration is an extraordinary remedy to be employed sparingly.") (citation omitted). "Motions for reconsideration are appropriate where, for example, the Court has patently misunderstood a party."  *Compania de Elaborados de Cafe v. Cardinal Capital Mgmt., Inc.*, 401

F. Supp. 2d 1270, 1283 (S.D. Fla. 2003).  But "[a] motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992).  "[T]he movant must do more than simply restate his or her previous arguments, and any arguments the movant failed to raise in the earlier motion will be deemed waived." Compania, 401 F. Supp. 2d at 1283.  Simply put, a party "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005).

The Plaintiff seeks to have the Court alter its Order dismissing the Complaint with prejudice and allow Plaintiff to file its Amended Complaint pursuant to Rule 15. "The decision to alter or amend a judgment is committed to the sound discretion of the district court." *Edwards v. United States*, 295 F. App'x 320, 321 (11th Cir. 2008) (quoting *Drago v. Jenne*, 453 F.3d 1301, 1305 (11th Cir. 2006)). Generally, Rule 15 governs amendment to pleadings.  Apart from initial amendments permissible as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id*.  However, "[a] district court need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile."  *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).  The law in this Circuit is clear that "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile."  *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263

(11th Cir. 2004); *see also Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1292 n.6 (11th Cir. 2007) (same); *Thompson v. City of Miami Beach, Fla.*, 990 F. Supp. 2d 1335, 1343 (S.D. Fla. 2014) ("[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile.") (citation omitted).

"[D]enial of leave to amend is justified by futility when the 'complaint as amended is still subject to dismissal.'" *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999); *see Dysart v. BankTrust*, 516 F. App'x 861, 865 (11th Cir. 2013) (same); *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 822-23 (11th Cir. 1999) ("When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail.").  "The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied."  *Bill Salter Adver., Inc. v. City of Brewton, AL*, 2007 WL 2409819, at *2 (S.D. Ala. Aug. 23, 2007) (citing *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996) (amendment is futile if cause of action asserted therein could not withstand motion to dismiss)); *see also Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011) ("A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss.").

## III.  DISCUSSION

In its Order, the Court determined that, as a matter of law, Plaintiffs are unable to state a claim against Nationstar for violation on RESPA and Regulation X on the basis of the Notice and Request they sent Nationstar in April 2014.  As a result, amendment of their Complaint would be futile.  Nothing in the Motion changes that result.

Plaintiffs do not direct the Court to any change in controlling law or newly available evidence. *Contra Williams*, 320 F. Supp. 2d at 1357-58; *Burger King*, 181 F. Supp. 2d at 1369. Rather, their Motion rehashes old arguments, offers some new ones, and generally contends that the Court misapprehended the sound basis for their original Complaint.  While requesting leave to amend, Plaintiffs in effect attempt to rehabilitate the same claims dismissed in the Order. Because their requested relief is both improper under Rule 59(e) and amendment of their Complaint would in any event be futile, Plaintiffs' Motion is denied.

### A.    Alleged Misapplication of Funds

Central to Plaintiffs' Motion for Reconsideration is its allegation that Nationstar failed to apply the Hardest Hit Program funds advanced to Nationstar as payments on Plaintiffs' mortgage.  However – as the Court explained in its Order – that fact cannot substantiate Plaintiffs' RESPA claims.

New to Plaintiffs' proposed Amended Complaint is their allegation that "[t]he fact that Nationstar proceeded with the foreclosure sale while it was receiving Hardest Hit payments *gives rise to the inference* that Nationstar did not apply the Hardest Hit funds to Plaintiffs' account. Instead, it appears that Nationstar placed the Hardest Hit funds in a 'suspense account', a mortgage servicer accounting device where the servicer retains custody and control of a borrower's funds, but does not actually apply those funds to the borrower's account."  Am. Compl. ¶ 12 (emphasis added).  Plaintiffs further allege that "[e]ven if Nationstar's response to the CFPB inquiry were the equivalent of a response to the [Notice and Request], it was not a sufficient response" because the Nationstar Letter "refers only to the foreclosure sale, and does not address the apparent failure to credit the Hardest Hit funds" or "provide the effective date of any correction to the account, as required."  *Id*. ¶ 20.

11

Despite their artful repleading, Plaintiffs never raised the issue of mis- or non-applied funds in *either* the CFPB Complaint *or* the Notice and Request.  The CFPB Complaint states that Plaintiffs' "property was sold while [they] were in an active loss mitigation home retention option," that Nationstar "continued to accept Hardest Hit Funds nearly three months after the foreclosure sale occurred," and that in total Nationstar "accepted $42,000 while processing the home through a sale."  It nowhere alleges that Nationstar failed to apply the Hardest Hit funds to Plaintiffs' mortgage account.  Likewise, the Notice and Request states that "it was an error for Nationstar to accept [the Hardest Hit] funds in May [2014] and the months thereafter and still proceed with the foreclosure sale in December [2014]."  It does not allege that Nationstar failed to apply those funds to reduce the amounts due under Plaintiffs' mortgage.  In terms of correcting the error they identified – proceeding to sale in the Foreclosure Action during the pendency of Plaintiffs' loss mitigation process – both the CFPB Complaint and the Notice and Request requested that the sale and transfer of title be vacated and reversed.

In its Order, the Court explicitly addressed the issue of Nationstar's alleged failure to correctly apply the Hardest Hit funds to Plaintiffs' mortgage loan balance.  As the Court explained, "that failure cannot substantiate Plaintiffs' claim brought here – for violation of RESPA in connection with the Notice and Request.  Even if Nationstar failed to credit Plaintiffs' account, they still complied with the demands in and responsive obligations triggered by the Notice and Request."  That is, Nationstar responded in full to the error addressed to them in the CFPB Complaint and replicated in the Notice and Error.  It then cooperated with Plaintiffs before the State Court in the Foreclosure Action in respect of vacating the December 2013 foreclosure sale and the January 2014 certificate of title.  As stated in the Nationstar Letter: "Pursuant to the research performed, our records indicate there is an active Hardest Hit Funds (HHF) plan for the

above account; furthermore, we have concluded the foreclosure sale has been scheduled for rescission."  Plaintiffs demanded that the foreclosure sale be vacated.  It was.  Because Plaintiffs never raised the issue of mis- or non-applied funds, Nationstar had no reason to respond to it. That alleged failure thus cannot, as a matter of law, substantiate a RESPA claim based on Nationstar's obligations to respond in compliance with Regulation X.

Plaintiffs ask for clarification of the Court's dictum that they may be able to "assert[] a viable claim against Nationstar . . . based on Nationstar's purported failure to credit their mortgage loan with the funds advanced under the Program."  The Court is not inclined to provide Plaintiffs litigation advice as to what recourse they may have against Nationstar for its alleged misapplication of the Hardest Hit funds.  The Court's legal determination on the issues presented here is abundantly clear:  even taking those allegations as true, because Plaintiffs did not include them in either its CFPB Complaint or Notice and Request, they cannot substantiate a claim against Nationstar under RESPA.

### B.  Alleged Failure to Investigate

Plaintiffs' allegations as to the sufficiency of Nationstar's response are equally misdirected.  As the Court previously explained, the error resolution procedures articulated in Section 1024.35 of Regulation X require servicers to comply with certain obligations upon written notice from the borrower asserting error on the part of the servicer.  *See* 12 C.F.R. § 1024.35(a).  In response to a notice of error:

> Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:
>
> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).  Thus, the CFPB Complaint obligated Nationstar *either* to correct the alleged error and notify Plaintiffs of the correction, pursuant to 12 C.F.R. § 1024.35(e)(1)(i)(A), *or* to investigate and provide Plaintiff with a written notification stating its determination that no error occurred and a reason for that determination, along with other information, pursuant to 12 C.F.R. § 1024.35(e)(1)(i)(B).

The Nationstar Letter complied with the first option.  It stated that Nationstar had corrected the error identified – proceeding to sale in the Foreclosure Action during the pendency of Plaintiffs' loss mitigation process – inasmuch as the foreclosure sale has been scheduled for rescission.  It identified the date of the correction – April 16, 2014, on which the State Court was to consider the motion to vacate the sale.  It provided a contact person, number, mailing address and email address, for future correspondence on the issue.  That constitutes full compliance with the regulation.  Plaintiffs' averment that "there are material questions of fact concerning whether Nationstar ever performed a *reasonable* investigation . . . in response to the CFPB Complaint," ECF No. [29] (Pls. Repl.) at 2, fails to acknowledge that the regulation is stated in the disjunctive.  Because Nationstar acknowledged and corrected the error presented to them by Plaintiffs, no investigation was required.

## C.    Status of CFPB Complaint

Plaintiffs raise the novel argument that, because the CFPB Complaint was not sent to Nationstar's designated address for qualified written requests, it cannot be considered a qualified

CASE NO.  14-CIV-61786-BLOOM/Valle

written request within the meaning of RESPA, and as such, the Nationstar Letter cannot serve as a legally sufficient response as required by Regulation X.

Of course, Plaintiffs could have offered this argument in response to Nationstar's motion to dismiss.  They chose not to.  Accordingly, it cannot serve a basis for reconsideration.  *See Michael Linet*, 408 F.3d at 763 (movant "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment").  Plaintiffs' improper imposition of new argument is especially acute here, where the parties actively contested, and the Court determined, that the CFPB Complaint triggered Nationstar's response obligations, and that the Notice and Request was duplicative of the CFPB Complaint.

Even if it were proper for the Court to consider Plaintiffs' newly-raised argument, the authority Plaintiffs cite in support of their argument is distinguishable.  Pursuant to Regulation X, "a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests."  24 C.F.R. § 3500.21(e)(1).  The courts of appeal in *Roth v. CitiMortgage Inc.*, 756 F.3d 178 (2d Cir. 2014), and *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, (10th Cir. 2013), held that where a servicer complies with the notice requirements of 24 C.F.R. § 3500.21 for designating a qualified written response address, a letter sent to a different address is not a qualified written response for purposes of triggering the servicer's response obligations.  *Roth*, 756 F.3d at 182; *Berneike*, 708 F.3d at 1148-49; *but see Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 364 (E.D. Pa. 2013) (holding that while servicer may establish a designated address, the regulations do not require a borrower to send her request to that address; rather, all that is required is that the loan servicer actually receive the borrower's request for information); *McLean v. GMAC Mortgage Corp.*, 2008 WL 5246149, at *4 (S.D. Fla. Dec. 16, 2008) (refusing to enforce a requirement that a qualified written request  be sent to a separate and

exclusive address where insufficient evidence had been presented that servicer had given notice of an exclusive address for qualified written requests).  But, those courts so held in considering whether the servicer's obligations were triggered and concluded that the servicers were not obligated to respond to a potential notice of error, *not* in determining that a servicer who did respond would be penalized by construing their response as inadequate.  As they explained, "RESPA is a consumer-protection statute, and it imposes short timeframes for mortgage servicers to respond to potentially detailed inquiries."  *Roth*, 756 F.3d at 181 (citing *Freeman v. Quicken Loans, Inc.*, 132 S.Ct. 2034, 2038 (2012)).  Because "RESPA was intended to reform the real estate settlement process to give consumers greater and more timely information . . . allowing a servicer to designate an exclusive address where such requests can be handled does not undermine this goal."  *Berneike*, 708 F.3d at 1149 (citation omitted).  That is, a servicer's ability to designate an exclusive address is meant "[t]o aid servicers with this task of providing consumers with timely information," *Roth*, 756 F.3d at 181; it is not meant to prevent a servicer from providing a timely response where a consumer does not send the notice of error to the correct address.  As such, it does not follow that Plaintiffs' failure to send the CFPB Complaint to Nationstar's designated address renders the Nationstar Letter a deficient response under Regulation X.  The Court could locate no authority for that proposition, and declines to adopt it here.

Furthermore, the exceptions provided by 12 C.F.R. § 1024.35(g) obviate the need to address the issue under the facts presented here.  As the Court explained in its Order, the response obligations under 12 C.F.R. § 1024.35(e)(1)(i) are not required where the notice of error is duplicative, as expressed in 12 C.F.R. § 1024.35(g).  That subsection provides, in relevant part:

> A servicer is not required to comply with the requirements of paragraphs (d), (e), and (i) of this section if the servicer reasonably determines that . . . [t]he asserted error is substantially the same as an error previously asserted by the borrower for which the servicer has previously complied with its obligation to respond pursuant to paragraphs (d) and (e) of this section . . . .

12 C.F.R. § 1024.35(g)(1)(i).  The Court concluded that "it was reasonable for Nationstar to determine that the errors asserted in the Notice and Request were duplicative of errors as to which Nationstar had previously complied with its obligation to respond in its Letter and through its participation in the Foreclosure Action."  Order at 13.  Plaintiffs' argument based on Nationstar's qualified written response address does not undermine that conclusion.  Nationstar's determination that the Notice and Request was duplicative was reasonable *even if* the CFPB Complaint was not properly addressed and therefore did not trigger Nationstar's response obligations under Regulation X.

### D.    Plaintiffs' Request for Information

The Court also dismissed Plaintiffs' RESPA claim for Nationstar's alleged failure to respond to their request for information – regarding the escrow balance on their mortgage – because they cannot allege that the alleged violation resulted in actual damages.  As the Court explained:

> Plaintiffs' information request asked Nationstar to "justify" the outstanding escrow balance when that issue had already been adjudicated against Plaintiffs and in favor of Nationstar by the State Court in 2010.  . . . [W]hatever damages Plaintiffs suffered resulted directly from the State Court's Foreclosure Judgment – *not* from Nationstar's alleged inaction in violation of RESPA.

Order at 17.

In their Motion, Plaintiffs highlight that the escrow balance as to which they sought information in 2014 was approximately double the balance in the State Court's final judgment in 2010.  Thus, they argue that "the judgment was not sufficient to advise Plaintiffs as to the basis

17

of the asserted escrow debt." Mtn. at 8. Plaintiffs still do not plausibly state what actual damages they could have suffered from Nationwide's failure to provide the requested information. Regardless, they ignore the facts apparent from their own Complaint and attendant submissions which explain the increased escrow amount. As the Court stated, the State Court "determined that Nationstar was entitled to recover any further costs incurred in the Foreclosure Action. . . above the amounts advanced for unpaid escrows at the time of judgment . . . *including any advances made by Nationstar under the terms of the note and mortgage agreement, such as additional amounts advanced for unpaid escrows*." Order at 17-18 (emphasis added). As the Court previously determined, the escrow amounts due and owing from Plaintiffs to Nationstar – including any increases between 2010 and 2014 – was adjudicated by the State Court. It is a matter of public record in a case where Plaintiffs are the sole named defendants and in which they continue to participate. Whatever damages Plaintiffs can plausibly state can result only from that judgment, *not* from Nationwide's alleged failure to provide information "justifying" it.

That said, the Court notes that the fact that Plaintiffs cannot state a claim under RESPA because they cannot claim actual damages does not relieve Nationstar of its statutory obligation to respond to Plaintiffs' request for information. As the Court previously explained, taking as true the facts as alleged in Plaintiffs' original Complaint (and their proposed Amended Complaint), Nationstar, in failing to respond at all to Plaintiffs' request for information concerning the escrow amounts, did not adhere to the requirements of 12 C.F.R. § 1024.36. *See* Order at 15.

Plaintiffs' proposed Amended Complaint adds another wrinkle to this discussion. Therein, they allege for the first time with respect to their request for information claim that:

> Nationstar's failure to comply with its obligations under RESPA is not an isolated incident, but the consequence of systemic deficiencies within Nationstar's

> mortgage servicing operations.   These deficiencies are a consequence of
> Nationstar's failure to implement adequate policies and procedures, and employ a
> sufficient quantity of appropriately trained personnel within its business units
> engaged in operations related to RESPA and Regulation X compliance.   Thus,
> Nationstar has engaged in a pattern and practice of disregarding its obligations
> under RESPA and Regulation X, and Borrowers are therefore entitled to an award
> of statutory damages under RESPA.

Am. Compl. ¶ 32.  Plaintiffs now offer what amounts to a completely new RESPA claim, based

on an alleged "pattern or practice of noncompliance."   As the Court previously explained, *see*

Order at 15, RESPA allows for damages relating to information requests from borrowers to

servicers in "an amount equal to the sum of – (A) any actual damages to the borrower as a result

of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or

practice of noncompliance with the requirements of this section, in an amount not to exceed

$1,000."  12 U.S.C. § 2605(f)(1).   Thus, while Plaintiffs cannot claim actual damages, they now

allege that Nationstar engaged in a "pattern or practice of noncompliance" justifying statutory

damages.

Plaintiffs have not presented grounds justifying reconsideration of the Order.   Their

proposed Amended Complaint does not contain "new evidence" justifying reconsideration under

Rule 59; after all, a single event (Nationstar's alleged failure to respond to Plaintiffs) does not a

pattern make.  They cite no intervening change in controlling law.   Further, Plaintiffs' "pattern

and practice" allegations in their proposed Amended Complaint are clearly conclusory, and

would not survive a motion to dismiss.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (while a complaint "does not need detailed factual allegations," it must provide "more

than labels and conclusions" or "a formulaic recitation of the elements of a cause of action");

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint cannot rest on "'naked assertion[s]'

devoid of 'further factual enhancement'") 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in

original)); *Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011) ("A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss.").

The Court recognizes that it would not be manifestly unjust to hold Plaintiffs to the facts they alleged and the claims they actually asserted in their original Complaint.Guided by the liberal pleading standards under the Federal Rules, pursuant to Rule 15, and in the interests of justice, the Court will modify its previous Order and permit Plaintiffs to amend their Complaint *only* with respect to their request for information claim (Count II) and *only* to provide factual allegations sufficient to support their claim for statutory damages resulting from Nationstar's alleged "pattern and practice of disregarding its obligations under RESPA and Regulation X" with respect to qualified requests for information.

## IV.   CONCLUSION

The remainder of Plaintiffs' Motion simply restates (rather than reformulates or adds to) arguments addressed and rejected by the Court in the Order.  The Court need not even address them again here.  *See*, *e.g.*, *Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp.*, 2012 WL 8569, at *2 (S.D. Fla. Jan. 1, 2012) (court need not address on motion for reconsideration arguments or law raised and previously rejected); *D'Antignac v. Deere & Co.*, 2013 WL 6383113, at *3 (S.D. Ga. Dec. 5, 2013) (court need not address "shameless attempts to rehash arguments already rejected by the court").

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that:

    1.  Plaintiffs' Motion for Reconsideration pursuant to Rule 59, ECF No. [27], is
        **DENIED**.

CASE NO.  14-CIV-61786-BLOOM/Valle

2. The Court **AMENDS** it Memorandum Opinion and Order Granting Defendant's Motion to Dismiss, ECF No. [26], to permit the filing of an Amended Complaint.

3. Pursuant to Rule 15, Plaintiffs are **GRANTED** leave to amend their Complaint with respect only to Count II therein and as detailed above.  Plaintiffs shall file their Amended Complaint on or before **March 27, 2015**.

4. The Clerk is **DIRECTED to REOPEN** this case.

5. The Court's previous Scheduling Order, ECF No. [18], is revived, and the parties are directed to comply with the requirements in that order.  **On or before March 30, 2015**, the parties shall select a mediator and reset a date, time and location in compliance with the requirements in that order.  The parties need not submit a joint interim status report.

    **DONE AND ORDERED** at Chambers in Fort Lauderdale, Florida, this 13th day of March, 2015.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record